IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV40-MU-2
(3:01CR184-5-MU)

| | |
|---|---|
| DAVID MICHAEL BLACKMON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )       O R D E R |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to
Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255,
filed January 27, 2005 (document # 1); on the Government's com-
bined Response and Motion to Dismiss, filed April 13, 2005
(document # 5); on Petitioner's two separate Motions to Stay or
Hold Decision in Abeyance, filed June 30, 2006 and August 16,
2007 (document ## 16 and 18, respectively); and on Petitioner's
Motion to Reinstate Title 28 U.S.C. § 2255 Motion, filed May 15,
2008 (document # 19).

## I. FACTUAL AND PROCEDURAL HISTORY

On September 11, 2001, a single-count Bill of Indictment was
filed, charging Petitioner (along with eight others) with conspi-
ring to possess with intent to distribute five kilograms or more
of cocaine powder and 50 grams or more of cocaine base, all in

1

violation 21 U.S.C. §§ 841 and 846 (Case 3:01CR184-5-MU, document # 3). In addition, the Indictment asserted, pursuant to 21 U.S.C. § 851, that if convicted of that charge, Petitioner could be subject to enhanced punishment by virtue of his two prior drug-related convictions. (Id.). Said conspiracy was alleged to have taken place from January 1993 until on or about September 1, 2001. (Id.).

On September 25, 2001, the Court conducted an arraignment proceeding, during which it advised Petitioner of the charge and advised him that, if convicted, he faced a mandatory term of life imprisonment. (Id., document # 15). Also on September 25, 2001, the Court conducted a detention hearing, at the conclusion of which the Court entered an order detaining Petitioner. (Id., document # 14). That Order further noted Petitioner's "admission to dealing" drugs, that the subject offense allegedly had occur-red while Petitioner was on supervised release for a federal conviction, and that Petitioner had admitted a cocaine addiction. (Id.).

On or about April 21, 2002, Petitioner submitted a letter to the Court stating, inter alia, that in light of his exposure to a mandatory life sentence, he wanted a new attorney because his current attorney had not practiced law long enough to be "well versed in Federal criminal law," and counsel was "very intimidat-ed" by the prosecutor. Thus, on May 2, 2002, the Court conducted

2

a proceeding inquiring into the status of counsel.  On that occasion, Petitioner reiterated his concerns and asked for re-placement counsel.  Out of an abundance of caution, the Court granted Petitioner's request and appointed new counsel for him.

On August 8, 2002, Petitioner, through replacement counsel, entered into a written Plea Agreement with the Government whereby he agreed to plead guilty to the conspiracy charge.  (Id., document # 124).  The Agreement also records Petitioner's understanding that: (1) he was facing a statutory mandatory minimum term of life imprisonment; (2) his sentence would be calculated in conformity with U.S. Sentencing Guidelines; (3) his sentence had not yet been determined and "any estimate from any source, including defense counsel, of the likely sentence is a prediction rather than a promise"; and (4) "no recommendations or agreements by the Untied States are binding upon the Court." (Id.).

As for his specific conduct, the parties' Plea Agreement sets forth stipulations that "[t]he amount of cocaine base that was known to or reasonably foreseeable by [Petitioner] was at least 150 grams but less than 500 grams"; that the "**base** offense level should be 34"; and that if Petitioner met certain condi-tions, the Government would recommend a three-level reduction for his acceptance of responsibility. (Id. emphasis added). Of equal relevance here, the Plea Agreement further reports Petitioner's understanding that "[n]otwithstanding any recommendation in this

Agreement as to the offense level, if the Probation Office deter-
mine[d] from [Petitioner's] criminal history that U.S.S.G. §
4B1.1 (Career Offender) . . . or a statutory minimum sentence
applie[d], then that provision w[ould] be used in determining the
sentence"; and that "if the Probation Office determine[d] that a
different offense level or a Guideline not addressed in this
agreement applie[d], and the Court f[ound] that the Probation
Office [was] correct, then the Court w[ould] use that offense
level or Guideline in determining the sentence."  (Id.).

Concerning his appellate rights, the Agreement contains
Petitioner's waiver of his rights to contest his conviction and/
or his sentence in any post-judgment proceeding, including a col-
lateral proceeding like this one under 28 U.S.C. § 2255, on any
grounds except ineffective assistance of counsel and prosecutori-
al misconduct.  Finally, the Agreement reports the parties'
understanding that in the event Petitioner provided what the
Government, in its sole discretion, deemed to be substantial as-
sistance, then the Government would seek a downward departure on
Petitioner's behalf.

On September 4, 2002, the Court held Petitioner's Plea and
Rule 11 Hearing.  During that proceeding, the Court engaged Peti-
tioner in a lengthy colloquy to ensure that his guilty plea was
being intelligently and voluntarily made.  (See Transcript of
Rule 11 Hrn'g., filed October 2, 2003).

4

By his sworn responses to the Court's numerous questions, Petitioner established that he had received a copy of the Indictment, he had discussed the document with counsel, and he understood the Court's explanation of the charge and its elements. (Id. at 5, 7-8 and 24). Moreover, Petitioner's answers established that he understood that he was facing a statutory minimum mandatory term of life imprisonment as was explained both by the court and counsel; that counsel had spoken with him about how the Sentencing Guidelines might apply in his case; that he understood that the Court would not be able to determine his sentence until after his Pre-Sentence Report had been prepared; and that he understood that even if he received a sentence which was more severe than the Government's recommendation, such fact would not give him the right to withdraw his guilty plea. (Id. at 9, 24-26).

Petitioner's answers further established that he had taken enough time to discuss possible defenses with counsel; that he was tendering a guilty plea because he, in fact, was guilty of the subject offense; that, other than the terms of his Plea Agreement, no one had made him any promises of leniency or a light sentence in order to induce his guilty plea; that no one had threatened, intimidated, or otherwise forced him into pleading guilty; that he understood the terms of his Plea Agreement, including the waiver provision by which he was giving up his

5

right to directly or collaterally challenge his conviction and/or
sentence on any grounds other than ineffective assistance of
counsel and/or prosecutorial misconduct; that he was satisfied
with the services of his attorney; and that he did not have any
questions or comments for the Court. (Id. at 30 and 34-37).
Thus, at the conclusion of that proceeding, the Court accepted
Petitioner's guilty plea. (Id. at 38).

In November 2002, United States Probation Officer W. Ross
Baker served a copy of Petitioner's Pre-Sentence Report upon de-
fense counsel. The Report relied upon the stipulations in the
Plea Agreement and calculated Petitioner's "**Base** Offense Level"
at 34, as had been contemplated by the parties. (PSR at 8). The
Report also noted that Petitioner was entitled to a three-level
reduction for his acceptance of responsibility. (PSR at 8).

Not surprisingly, the Report also indicated that, by virtue
of Petitioner's two prior felony drug convictions, he was a
Career Offender as defined under U.S. Sentencing Guidelines §
4B1.1, and so his "**Adjusted** Offense Level" had to be raised to
37. (PSR at 9). Consequently, once the three-level reduction for
acceptance of responsibility was made to that **Adjusted** Offense
Level, the Probation Officer determined that the resulting "**Total**
Offense Level" was 34, his Criminal History Category was VI and
his resulting Guidelines range of imprisonment was 262-327 months
imprisonment. (PSR at 15). However, Petitioner's statutory

6

mandatory minimum term was life imprisonment. (PSR at 15).

Furthermore, although the Report noted that the Government's file

contained statements from several witnesses -- including two of

Petitioner's suppliers whose statements indicated that they, in

combination, had sold Petitioner more than 1.5 kilograms of co-

caine base –- no attempt was made to upwardly adjust his Total

Offense Level due to the relevant stipulation in his Plea

Agreement. (PSR at 15).

        In any case, on June 17, 2003, the Government filed a Motion

for a Downward Departure on the basis of Petitioner's substantial

assistance. (3:01Cr184-5-MU, document # 181). The Motion noted

that based upon Petitioner's extensive criminal record, as evi-

denced by his Pre-Sentence Report, Petitioner was facing a

mandatory minimum term of life imprisonment. (Id. at 2). Never-

theless, the Government recommended that Petitioner's **Total**

Offense Level be reduced from 34 down to 32 and that he be sen-

tenced to a term of 240 months imprisonment. (Id. at 3).

        On June 18, 2003, the Court conducted Petitioner's Factual

Basis and Sentencing Hearing. At the outset of that proceeding,

the Court noted that during his Plea and Rule 11 Hearing, Peti-

tioner had given answers which established that his guilty plea

was intelligently and voluntarily tendered. (See Transcript of

Sent'g. Hrn'g., filed September 15, 2003 at 3). Next, the Court

asked questions which revealed that Petitioner had reviewed his

Pre-Sentence Report with his attorney and that there was a factual basis to support his guilty plea; consequently, the Court reaffirmed its acceptance of Petitioner's plea. (Id. at 2-3).

The Government then explained that although Petitioner had a "lousy record" which otherwise would have subjected him to a term of life imprisonment, the Government was seeking a downward departure to a 20-year term because of his substantial assistance. Thereafter, defense counsel stated that he was not challenging the Pre-Sentence Report's calculations, notwithstanding the fact that the results of a polygraph examination of Petitioner tended to show that he had not been involved with in excess of 1.5 kilograms of cocaine base as two of the Government's witnesses had stated during their debriefings. (Id. at 4-5). Rather, counsel explained that such a battle would have been unprofitable since the test results would not have been admissible and a challenge could have put Petitioner at risk for a withdrawal of the Government's § 5K1.1 Motion. (Id. at 5). However, defense counsel did ask the Court to take Petitioner's favorable polygraph results into account in determining how much of a departure to give him. (Id. at 6-7).

In response, counsel for the Government reminded the Court that Petitioner had stipulated to involvement with 150 to 500 grams of cocaine base, an amount which was far less than the amount that the two questionable witnesses had imputed to him;

8

and that the Government obviously had discredited the witnesses representations, as evidenced by its willingness to allow Petitioner to plead to the drastically lower amount. (<u>Id</u>. at 8-9). Counsel for the Government also told the Court about an occasion in 1999 when Petitioner was arrested after an undercover deal where he sold cocaine base to an officer and he admitted that he had returned to drug dealing after his release from prison. (<u>Id</u>. at 9). Counsel further stated that a search of Petitioner's home incident to that arrest had produced drug paraphernalia, cash and a small amount of marijuana; and that Petitioner had been on supervised release at the time of that incident. (<u>Id</u>.). Thus, the Government asked the Court not to give Petitioner a reduction below 240 months. (<u>Id</u>.).

For his part, Petitioner apologized for again being a federal defendant. (<u>Id</u>.). Petitioner stated that his return to drug dealing after his release from prison had been precipitated by his inability to secure lawful employment. (<u>Id</u>. at 9-10). Petitioner further explained that his girlfriend had become pregnant and his elderly mother was in need of his support. (<u>Id</u>.). Petitioner asked the Court to treat him fairly and not let him be victimized by the statements of the two discredited Government witnesses. (<u>Id</u>. at 10). Notably, however, Petitioner made no mention of any dissatisfaction with the Pre-Sentence Report's determination that he was a Career Offender and subject to a

9

mandatory life sentence, and he made no mention of his attorney's decision not to challenge that determination.

The Court granted the Government's Motion for a Downward Departure. However, the Court departed down below the 240-month term recommended by the Government and imposed a term of 210 months imprisonment. (_Id_.). After the Court pronounced its Judgment, Petitioner thanked the Court and the proceeding was ended. (_Id_. at 12). On June 27, 2003, Petitioner filed his Notice of Appeal to the Fourth Circuit Court of Appeals. (Case 3:01CR184-5-MU, document # 184).

On appeal, Petitioner argued, through newly appointed counsel, that he was entitled to have his guilty plea set aside on the basis of ineffective assistance of counsel and on the basis of prosecutorial misconduct; and that his sentence was imposed in violation of the U.S. Sentencing Guidelines. (See Petitioner's Reply to Government's Response, document # 9, Exhibit A). Petitioner also submitted his own supplemental brief, arguing that the Government had breached its Plea Agreement with him; the prosecutor had engaged in misconduct; he should not have been sentenced for involvement with crack, as opposed to another form of cocaine base; and his sentence was imposed in violation of the rule announced in _Apprendi v. New Jersey_, 530 U.S. 466 (2000).

On December 22, 2003, the Government filed a Motion to Dis-

miss on the basis of the appellate waiver provision in Petitioner's Plea Agreement. On March 5, 2004, the Fourth Circuit granted the Government's Motion and dismissed Petitioner's appeal. (Case 3:01CR184-5-MU, document # 205).

On January 27, 2005, Petitioner returned to this Court on the instant Motion to Vacate under 28 U.S.C. § 2255 (document # 1). As enumerated in his Motion, Petitioner alleges that: (1) the Government breached the parties' Plea Agreement; (2) such breach renders that Agreement and its waiver provision unenforceable; (3) defense counsel was ineffective for having failed to challenge the Government's breach of the parties' Agreement; (4) counsel was ineffective for having failed to seek a different Plea Agreement, or for not otherwise challenging the Government's offer for Petitioner to plead guilty to involvement with cocaine base, not cocaine powder; (5) counsel also was ineffective for having failed to address the prosecutor's concession that it had discredited portions of two of its witnesses statements; (6) the prosecutor's comment on the 1999 arrest incident prejudiced him at sentencing; (7) his sentence erroneously was based upon an ambiguous Amendment to the U.S. Sentencing Guidelines; and (8) certain property of his was confiscated pursuant to an illegal search.

On April 13, 2005, Respondent filed its combined Response and Motion to Dismiss (document # 5). Such document contends

that Petitioner procedurally is barred from raising his non-counsel related claims in this collateral proceeding; that Petitioner's claim of illegally seized money is not cognizable in this proceeding in any event; that his guilty plea was knowingly and intelligently entered and it stands as a bar to his claim that he was sentenced under an ambiguous Amendment; that any other claims which do not allege ineffective assistance or prosecutorial misconduct are barred by the Plea Agreement's waiver provisions; that Petitioner was not subjected to ineffective assistance of counsel; and that the prosecutor did not engage in any misconduct. Therefore, counsel for the Government asks that Petitioner's Motion to Vacate be dismissed.

On June 13, 2005, Petitioner filed a Reply to the Government's Response and Motion to Dismiss (document # 9). There, Petitioner argues that he had raised the issues of the Government's breach of their Agreement and other alleged instances of misconduct in his direct appeal, but the appellate Court dismissed that appeal; therefore, he "should be excused from his procedural default . . . "; and that this collateral proceeding is "the only avenue that Petitioner has left." (Id. at 2-3). Beyond that, Petitioner essentially reiterates the claims set forth in his Motion to Vacate.

Last, on June 30, 2006, Petitioner filed a Second Reply to the Government's Response and Motion to Dismiss (document # 17).

That time, Petitioner raised completely different arguments from his initial ones.

That is, Petitioner argues that certain provisions in his Plea Agreement -- the ones which explained the possibility of the application of the Career Offender Guidelines or any Guide-lines other than the one to which the parties had stipulated -- were never discussed during his Rule 11 Hearing; that because this District requires defendants to enter into their Plea Agreements before their Pre-Sentence Reports are prepared, a defendant "will never make an intelligent, not to mention voluntary plea"; that he would not have encountered this problem had his attorney advised him to refrain from "agreeing to those ambiguous terms" until after the Pre-Sentence Report was prepared; that he would have had a clearer picture of the probable outcome had the pro-secutor advised him that the base offense level was going to be 37, not 34; that even if the prosecutor did not mislead him, she allowed him to proceed on the basis of a misrepresentation re-garding the sentence he would receive; that his Plea Agreement was drafted illegally; that the Government's misrepresentation lulled him into believing that "he would be sentenced at offense level 31" and that was the only reason he waived his jury trial rights"; and that the Government failed to address his argument that he erroneously was sentenced under an ambiguous Amendment to the Sentencing Guidelines.

For its part, the Court carefully has reviewed the parties'
arguments and the relevant legal precedent.  Based upon that
review, the Court finds that Petitioner is not entitled to any
relief on his claims.  Therefore, Petitioner's Motion must be
<u>denied</u> and <u>dismissed</u>.

## II.  <u>ANALYSIS</u>

### 1.  <u>Petitioner's claim concerning the seizure of his funds is not cogniz-able in this proceeding</u>.

Taking his claims out of turn, by his last allegation, Peti-
tioner contends that when he was arrested by two Kannapolis
officers (on the charges underlying this conviction), approxi-
mately $1,147.00 was taken from his possession; and that such
money never has been returned to him.  Petitioner asserts that
his cash unlawfully was seized and that this Court should direct
the arresting officers immediately to return his funds to him.

However, it is well settled that claims brought pursuant to
28 U.S.C. § 2255 must attack either the judgment under which they
are confined, the court's jurisdiction to enter that judgment,
and/or the duration of their sentence.  Rules Governing Section
2255 Proceedings, Rule 1.

Inasmuch as Petitioner does not allege that the allegedly
illegal seizure of his money somehow affects either his Judgement
of Conviction or the duration of his confinement, this claim
simply is not cognizable in this proceeding.  Therefore, this

14

claim will be summarily <u>dismissed</u>.

      2.  **<u>Petitioner's Plea Agreement is valid</u>**
            **<u>and fully enforceable</u>**.

     Petitioner alleges that the Government breached its Plea Agreement with him; that such breach invalidates that Agreement; that the Agreement's waiver provision is not enforceable; and that counsel was ineffective for having failed to challenged the Government's breach.  At the crux of these claims is Petitioner's belief that the Government failed to keep its promise to secure a sentence based on his stipulation that he was involved with 150 to 500 grams of cocaine base, and that a base offense level of 34 was applicable to his offense.  However, it appears from his arguments that Petitioner simply has misconstrued the term "base offense level."

     As the term tends to suggest, the "base offense level" is the starting point for calculating a sentence, hence the term "base."  Such "base offense level" is determined by identifying a defendant's conduct.  In Petitioner's case, he pled guilty to having engaged in a drug conspiracy and he stipulated to a specific <u>base</u> offense level -- that is, to the lowest point at which his Guidelines calculations could begin.  However, nothing in Petitioner's Plea Agreement precluded the Probation Office from thereafter completing the proper procedure for calculating his <u>total</u> offense level by taking into consideration Petitioner's criminal history.  In fact, Petitioner's Plea Agreement expressly

15

noted that such additional calculations would be made by the Probation Office, and that the Probation Office's calculations, if accepted by the Court, would be the ones used to determine Petitioner's sentence. Further, Petitioner told the Court that he carefully had reviewed those terms and understood the priority that those calculations could take.

Nor did the Government mislead Petitioner by failing to expressly note in his Plea Agreement or elsewhere that he would be deemed a Career Offender. Indeed, it is clear that the U.S. Probation Office, not the Government prosecutor, is responsible for determining whether a defendant's prior convictions are of the kind that expose him to enhanced sentencing under Chapter 4 of the Guidelines. Thus, when the Government filed its § 851 Notice, it met its obligation of putting Petitioner on notice that his prior convictions could be used to subject him to an enhanced sentence. Furthermore, it is clear on this record that Petitioner actually was aware of this possibility as evidenced by his successful removal of his first attorney, in part, on the basis of Petitioner's complaint that he was facing a mandatory life sentence and wanted to be represented by an attorney who had more federal experience.

Moreover, Petitioner swore to the Court that he fully had reviewed his Plea Agreement with counsel and understood its terms, including the provisions which explained that he could be

16

sentenced as a Career Offender if his criminal history warranted that designation. Therefore, no further discussion of those matters was required by the Court. In sum, on this record, Petitioner cannot establish any breach by the Government or any failure by the Court.

Likewise, it goes without saying that since Petitioner has failed to establish that his Plea Agreement actually was breached, he also cannot establish that counsel was ineffective for having chosen not to raise such a claim. Nor can Petitioner establish any deficiency by defense counsel's having allowed him to enter into this particular Plea Agreement during the pre-trial phase of his case. Rather, as is apparent from the discussion above, Petitioner was fully aware of all of the consequences of his plea and the relevant sentencing possibilities at the time that he entered into his Agreement. Therefore, counsel did not fail Petitioner in this regard.

Equally critically, because Petitioner cannot establish that the Government breached its Plea Agreement with him, he cannot avoid enforcement of the waiver provisions that Agreement. Indeed, the Fourth Circuit repeatedly has approved the knowing and voluntary waiver of a defendant's right to appeal. See, e.g., Unite States v. Cohen, 459 F.3d 490, 493-95 (4th Cir. 2006), cert. denied 127 S. Ct. 1169 (2007); United States v. Johnson, 410 F.3d 137, 151-53 (4th Cir. 2005); United States v. General,

17

278 F.3d 389, 399-01 (4th Cir. 2002); and United States v. Brown, 232 F.3d 399, 402 (4th Cir. 2000. Accord United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005) (considering issue of first impression, holding that a defendant may also waive right to contest conviction or sentence in § 2255 motion "so long as the waiver is knowing and voluntary").

The record reflects that Petitioner appeared before the Court and swore that he understood his Plea Agreement, including the waiver provision and the limitations which it would impose upon him. As such, this case fits squarely within the principle that sworn statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields v. Attorney Gen. Of Md. 956 F.2d 1290, 1299 (4th Cir. 1988), citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Blackledge, 431 U.S. at 73-74. In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and Petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

18

Although Petitioner claims to have been unaware of certain aspects of his Plea Agreement and he takes issue with the fact such agreements are entered into before actual sentences are calculated, such arguments are belied, in part, by his sworn statements to the contrary and, in any case, are woefully insufficient to invalidate his Plea Agreement or any of its terms. Rather, Petitioner has failed to show that the Agreement and, in particular, its waiver provision cannot be enforced against him. Therefore, that waiver provision is valid and fully enforceable.

3.  **Petitioner's challenge to his sentence is barred by the terms of his Plea Agreement.**

In light of the fact that the waiver provision in Petitioner's Plea Agreement is fully enforceable, his claim that his sentence was calculated based upon an ambiguous Amendment to the U.S. Sentencing Guidelines is barred by that waiver. Consequently, this claim must be summarily dismissed.

4.  **The prosecutor's remark did not prejudice Petitioner at sentencing.**

Petitioner alleges that he was prejudiced at sentencing when the prosecutor revealed information about his 1999 arrest incident in opposing defense counsel's argument that Petitioner's sentence should have been calculated using a drug quantity below the amount to which he stipulated in his Plea Agreement. Petitioner acknowledges that he was sentenced at the bottom of the applicable range; however, he still believes he is entitled to

relief because "there is no way of knowing whether or not [the Court] would have sentenced him below the recommended Guidelines."

That is, Petitioner argues that his sentence should be vacated because the prosecutor's remark may have kept him from being sentenced "below the recommended Guidelines" range. However, the record is clear, notwithstanding the mention of that incident, that Petitioner actually was sentenced well below the otherwise applicable Guidelines range of 262 to 327 months. Petitioner even was sentenced below the 240-month term for which the prosecutor had argued. While Petitioner may be uncertain about whether the subject comments adversely affected his sentence, this Court can say with no uncertainty that the comments did not adversely affect him.

Moreover, it has not escaped the Court's attention that the remarks actually were appropriate and relevant in that they related to an additional crime which Petitioner committed during the time of the instant conspiracy. To be sure, the record shows that Petitioner became involved in the subject conspiracy sometime in 1998, that is, shortly after his 1997 release from federal custo-dy, and the conspiracy lasted until 2001. The incident which the prosecutor described took place in April 1999, during the life of the conspiracy. Thus, that information properly was brought to the attention of this Court. As such,

20

Petitioner cannot show any misconduct on this basis.

     5.  **Petitioner's remaining claims against counsel also fail**.

By his two final claims, Petitioner alleges that counsel was ineffective for having failed to seek a different plea agreement or to otherwise challenge the fact that Petitioner's Plea Agreement required him to plead guilty to involvement with cocaine base, not powder cocaine, and for having failed to take action on the prosecutor's concession at sentencing that two of her witnesses had inflated the drug amounts which they attributed to Petitioner.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields, 956 F.2d at 1297-99; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance

21

prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u>, <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

More critically, inasmuch as Petitioner has alleged ineffective assistance of counsel following the entry of his guilty plea, he has a different burden to meet. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 53-59; <u>Fields</u>, 956 F.2d at 1294-99; <u>and</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described a petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lockhart</u>, 474 U.S. at 59-60; <u>and</u> <u>Fields</u>, 956 F.2d at 1297. Critically, however, if a petitioner fails to meet his burden of

22

demonstrating prejudice, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Thus, "the central inquiry" is whether, but for counsel's alleged errors, this Petitioner would have insisted on a trial. <u>Slavek v. Kinkle</u>, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on going to trial). Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." <u>Martin v. United States</u>, 395 F.Supp. 2d 326, 329 (D. S.C. 2005). <u>See also</u> <u>Beck v. Angelone</u>, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); <u>and</u> <u>Burket v. Angelone</u>, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

Initially as to these claims, the Court notes that Petitioner does not claim that he is innocent of the conspiracy charge. Nor has Petitioner bothered to point the Court to any evidence which counsel could have presented in order to secure an acquittal for him. Such failures are damning to the instant claims of ineffective assistance of counsel.

23

Second, turning back to the record, it is clear that Petitioner greatly benefitted from tendering a guilty plea. Even in discounting the quantity of drugs which the two Government witnesses erroneously attributed to Petitioner, the Government still could have produced those witnesses to testify that Petitioner had repeatedly trafficked in cocaine base with them during the course of the conspiracy. Petitioner's Pre-Sentence Report further indicates that the Government could have produced testimony from the officer and the informant who were involved in the 1999 undercover deal along with the other damaging evidence which was secured in the course of that incident.

In light of Petitioner's failure to identify any evidence which could have exonerated him, the Court finds that a trial with the foregoing evidence likely would have resulted in a conviction for him. Had Petitioner been convicted following a trial, there is no question that he would have faced a mandatory minimum term of life imprisonment. However, by pleading guilty, Petitioner received less than a 20-year sentence. Thus, Petitioner cannot establish that there is a reasonable probability that, but for counsel's alleged ineffectiveness, he would have insisted upon a trial. Consequently, his claims against counsel can be rejected on that basis.

### III. CONCLUSION

The Court has considered Petitioner's arguments, the entire

record of this matter and the relevant legal precedent, and has found that he is not entitled to any relief on his claims. Therefore, the Government's Motion to Dismiss will be <u>granted</u>.

## IV. <u>ORDER</u>

**IT IS, THEREFORE, ORDERED THAT:**

1. Petitioner's Motion to Reinstate his Motion to Vacate (document # 19) is **GRANTED;**

2. Petitioner's two Motions to Stay or Hold Decision in Abeyance (document ## 16 and 18) are **DISMISSED as moot;**

3. The Government's Motion to Dismiss is **GRANTED;** and

4. Petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: September 29, 2008

Graham C. Mullen
United States District Judge

25